UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>BRIAN JACKSON,<br><br>                Defendant. | CR. 20-50006-JLV<br><br>ORDER |

      Defendant Brian Jackson is charged with conspiracy to distribute a controlled substance, methamphetamine. See Docket 1. He made his initial appearance in this case on February 12, 2020, in front of Magistrate Judge Daneta Wollmann, who addressed the issue of detention at that time. See Docket 6. Magistrate Wollmann entered an order that same day finding (1) a serious risk Mr. Jackson would not appear and (2) a serious risk Mr. Jackson would endanger the safety of another person or the community if granted pretrial release and, therefore, ordering the detention of Mr. Jackson pending trial in this case. (Docket 8 at p. 1). Mr. Jackson, through his attorney, has since filed five motions for reconsideration of the Magistrate Judge's detention order, requesting pretrial release for Mr. Jackson. See Dockets 20, 32, 34, 46 & 50. The Magistrate Judge denied all five of those motions. See Dockets 23, 33, 40, 47 & 51. Now pending is Mr. Jackson's appeal from the Magistrate Judge's latest order denying reconsideration of her detention order, although it is not termed as such. (Docket 52).

I. **Appeal from Order Denying Pretrial Release**

A. **Facts**

This preliminary factual recitation is based on the allegations in the indictment (Docket 1), information contained in the pretrial services report (Docket 15), Mr. Jackson's motions for release (Docket 20, 32, 34, 46 & 50), the government's response in opposition to Mr. Jackson's first motion for release (Docket 22), an affidavit Mr. Jackson filed in accompaniment with his third motion for release (Docket 35), Mr. Jackson's response to a memorandum by the government opposing Mr. Jackson's third motion for release (Docket 39) and Mr. Jackson's appeal (Docket 52).

Mr. Jackson is charged with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine.  See Docket 1.  He has an extensive record which consists primarily of traffic and drug related offenses.  See Docket 15 at pp. 4-10.  Mr. Jackson's first drug related offense—possession for sale of a controlled substance—was in California in 1992, and he has had numerous similar offenses in years since.  See id.  The pretrial services report filed in this case notes Mr. Jackson "ha[s] a history of violating probation and parole."  Id. at p. 10.  The report ultimately concludes Mr. Jackson's "risk of flight/non-appearance seems minimal" given his ties to Rapid City, which include that he owns a home and business in town and resides with family.  Id.  However, the report also concludes Mr. Jackson's

"greatest risk to the community involves factors surrounding his methamphetamine use and alleged distribution." Id.

Since the pretrial services report was filed, the government proffered information that, prior to his arrest in this case, "Sources of Information informed law enforcement that [Mr. Jackson's] source of methamphetamine supply is in California and [he] traveled back and forth to California multiple times to obtain methamphetamine for distribution in South Dakota." (Docket 22 at p. 3).  Law enforcement tracked Mr. Jackson's vehicle to California during its investigation, and he remained in California for about two months, which the government asserts "shows he has extensive ties there."  Id.  Additionally, during the course of investigation, law enforcement monitored Mr. Jackson's residence in Rapid City and the government states "agents noted that persons believed to be involved in distribution and use of methamphetamine reside in the residence . . . , and . . . multiple persons believed to be involved in methamphetamine use and distribution were seen coming and going from [the] home."  Id.

Mr. Jackson "has lived in Rapid City, SD, for 10 years and has lived" in a residence he owns for eight years.  (Docket 15 at pp. 1-2).  His daughter and her son resided with him in his residence prior to his arrest, and they continue to reside in the home.  Id. at p. 2.  Since 2011, Mr. Jackson worked at B&R Drywall in Rapid City, SD, which he co-owns and operates.  Id.

3

While there have been slight variations in Mr. Jackson's release plans included in his various motions for pretrial release, most recently, in his appeal, Mr. Jackson proposes to live with John Pimentel in Mr. Pimentel's home in Keystone, SD.  (Docket 52 at p. 1).  Mr. Jackson represents to the court that "Mr. Pimentel is now retired, so he is willing to provide around-the-clock supervision.  Mr. Pimentel is also aware of his duty to contact Pretrial Services should [Mr.] Jackson abscond or violate any conditions of pretrial release."  Id.  Mr. Jackson states he is "not a danger to the community" because his "criminal history, while not insignificant, consists almost entirely of drug offenses."  Id. at p. 2.  He argues he is "not a flight risk" because he has "retained counsel," which indicates his investment in these proceedings, and he owns a home and business in Rapid City.  Id.  Furthermore he states he "continues to need follow-up care for his various medical conditions, including a stroke he suffered while in custody," and asserts the "Pennington County Jail has been unable to meet these needs."  Id.  If released, Mr. Jackson intends to return to work at B&R Drywall.  Id.

  **B. Legal Standard**

A person "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  The district court reviews a detention order entered by a magistrate judge *de novo*.  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*).  "To engage in a

4

meaningful de novo review, the district court must have available the options open to the magistrate" under the Bail Reform Act, 18 U.S.C. § 3142. Maull, 773 F.2d at 1482 (referencing United States v. Orta, 760 F.2d 887, 890 (8th Cir. 1987) (*en banc*)). The district court "shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond . . . unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court determines release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others, it must next consider whether release on conditions will. See id. § 3142(c). If so, the court "shall order the pretrial release of the person" subject to the conditions that the person "not commit a Federal, State, or local crime during the period of release and . . . cooperate in the collection of a DNA sample," if authorized under 42 U.S.C. § 14135a, as well as the "least restrictive further condition, or combination of conditions." 18 U.S.C. § 3142(c)(1)(A)-(B).

In determining whether release on conditions is appropriate, the court considers:

>  (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
>
>  (2) the weight of the evidence against the person;
>
>  (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id. § 3142(g).

However, in certain cases, for example those which involve "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)," a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." Id. § 3142(e)(3). "In a presumption case . . . a defendant bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

6

If the presumption is rebutted, "[a] defendant may be detained before trial '[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance . . . .'" Id. (quoting United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003) (emphasis in original)).

### C.    Analysis

Mr. Jackson is charged with an offense to which the rebuttable presumption applies—specifically, an offense under the Controlled Substances Act which carries a maximum term of imprisonment of life in prison. See 21 U.S.C. § 841(b)(1)(A)(viii).  He bears the burden of production to present evidence he does not pose a flight risk or danger to the safety of another person or the community.  In determining whether Mr. Jackson produced sufficient evidence to rebut the presumption of detention, the court looks to the Bail Reform Act factors.  See United States v. Cantu, 935 F.2d 950, 951 (8th Cir. 1991).

#### i.    Nature of the offense charged

The serious nature of the offense charged weighs against a finding that the detention presumption is rebutted.  Mr. Jackson is charged with conspiracy to distribute a significant amount of methamphetamine—specifically, 500 grams or more of a mixture or substance containing

7

methamphetamine—an illegal substance which has wrought substantial destruction in the greater Rapid City area in recent years.

### ii. Weight of the evidence

The weight of the evidence in this case known to the court at this time also weighs against a finding that the detention presumption is rebutted. While Mr. Jackson is presumed innocent of the charge against him unless and until proven otherwise, the government has proffered substantial evidence against Mr. Jackson even in the relatively minimal briefing that has occurred in the case so far. It is clear law enforcement conducted significant investigation of Mr. Jackson prior to his arrest on the charge, which included monitoring his residence. Investigating agents observed multiple people believed by law enforcement to be involved in methamphetamine distribution living in Mr. Jackson's residence with him, and they observed people frequently coming and going from the residence whose "behavior . . . appeared to be . . . indicative of purchasing methamphetamine from [Mr. Jackson's] home." See Docket 22 at p. 3. Law enforcement learned from multiple sources of information that Mr. Jackson's source of methamphetamine was in California. Id. They subsequently tracked Mr. Jackson's vehicle to California, where he remained for a couple of months. Id. Upon Mr. Jackson's return to South Dakota, law enforcement conducted a traffic stop of Mr. Jackson's vehicle and found Mr. Jackson to be "in possession of approximately two pounds of

8

methamphetamine." Id. The court finds the weight of the evidence proffered so far is substantial.

### iii. History and characteristics of Mr. Jackson

Mr. Jackson's history and characteristics also weigh against a finding that the detention presumption is rebutted. It is true Mr. Jackson has significant ties to Rapid City. For example, he owns a home and business in Rapid City, and has resided in Rapid City for a decade. Prior to his arrest, his daughter and grandson resided with Mr. Jackson in his home, and they have continued to reside in the home while Mr. Jackson has been in pretrial detention. Additionally, the court is sympathetic to Mr. Jackson's apparent ongoing health issues. On the other hand, as the government notes, Mr. Jackson clearly retains significant connections to California, where he spent about two months prior to returning to South Dakota when he was found to be in possession of two pounds of methamphetamine, clearly a substantial distribution amount of the substance. As noted in his pretrial services report, Mr. Jackson has a history of violating probation and parole. His record of repeated drug-related offenses extending back over several decades shows a pattern of similar activity by Mr. Jackson with no sign of a commitment by him to let up. Ultimately, while this factor is certainly a closer call than the previous two, the court finds it nevertheless weighs against a finding that the detention presumption is rebutted.

### iv. Danger to Any Person or the Community

Finally, as the pretrial services report correctly notes, any threat Mr. Jackson may pose to another person or the community primarily stems from his alleged involvement in methamphetamine distribution and, in turn, the destructiveness of the drug in the lives of individuals who access and use it and the residual impacts on family and other community members around those individuals. Even if the likelihood Mr. Jackson would engage in methamphetamine distribution on pretrial release is diminished by his recent health concerns and the logistics of his latest release plan to reside with Mr. Pimentel in Keystone, the court finds, having considered the facts of this case as they are known at this time and the Bail Reform Act factors, Mr. Jackson has not produced sufficient evidence that he does not pose a danger to the community or a risk of flight to rebut the presumption of pretrial detention.

Accordingly, it is

ORDERED that defendant's appeal from the Magistrate Judge's order denying his motion for release (Docket 52) is denied.

Dated August 5, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE